1  Lawrence J. Semenza, III, Esq., Bar No. 7174
   Email: ljs@skrlawyers.com
2  Christopher D. Kircher, Esq., Bar No. 11176
   Email: cdk@skrlawyers.com
3  Jarrod L. Rickard, Esq., Bar No. 10203
   Email jlr@skrlawyers.com
4  SEMENZA KIRCHER RICKARD
5  10161 Park Run Drive, Suite 150
   Las Vegas, Nevada 89145
6  Telephone: (702) 835-6803
   Facsimile: (702) 920-8669
7
8  *Attorneys for Plaintiff Megan E. Klatt*
   *and all others similarly situated*
9

**UNITED STATES DISTRICT COURT**

10

**DISTRICT OF NEVADA**

11

| | |
|---|---|
| 12  MEGAN E. KLATT, an individual, on behalf of herself and all others similarly situated; | Case No.  2:17-CV-02425-RFB-PAL |
| 13 | |
| 14                Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| 15  v. | |
| 16  DIGNITY HEALTH, a California corporation; DOES 1-50, unknown individuals; and ROE | **JURY TRIAL DEMANDED** |
| 17  COMPANIES 1-50, unknown business entities, | |
| 18 | |
| 19                Defendants. | |

20

For her First Amended Complaint, Plaintiff Megan E. Klatt ("Klatt"), on behalf of herself

21

and all others similarly situated, complains against Defendant Dignity Health ("Dignity"), a

22

California corporation, as follows:

23

<u>**PARTIES**</u>

24

1.      Klatt is a resident of Clark County, Nevada.

25

2.      Klatt, as a class representative, meets all requirements of Nev. R Civ. P. 23 and

26

Fed. R. Civ. P. 23.  The claims asserted by Klatt on behalf of those similarly situated meet all

27

requirements of Nev. R. Civ. P. 23 and Fed. R. Civ. P. 23.

28

*(left margin, vertical text)* SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

3.    Pursuant to and as required by Fed. R. Civ. P. 23(a): 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact that are common to the class; 3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interest of the class.

4.    Pursuant to and as required by Fed. R. Civ. P. 23(b): 1) prosecuting separate actions would create a risk of (a) inconsistent or varying adjudications, or (b) adjudications that would be dispositive of other members not parties to the individual adjudications; 2) the party opposing the class acted on grounds that apply generally to the class; or 3) that the court finds that questions of law or fact common to class members predominate.

5.    Dignity is a California corporation conducting business in Clark County, Nevada as St. Rose Dominican Hospitals.

6.    The true names and capacities of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Klatt at this time and Klatt therefore sues said Defendants by such fictitious names.  Klatt is informed and believes, and therefore alleges, that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings referred to and caused damages proximately to Klatt as herein alleged, and Klatt will ask leave of this Court to amend her Complaint to insert the true names and capacities of said DOES when the same become ascertained, and join said Defendants in this action.

7.    The true names and capacities of the Defendants named herein as ROE COMPANIES 1 through 50, inclusive, are unknown to Klatt at this time and Klatt therefore sues said Defendants by such fictitious names.  Klatt is informed and believes, and therefore alleges, that each of the Defendants designated herein as ROE COMPANIES are responsible in some manner for the events and happenings referred to and caused damages proximately to Klatt as herein alleged, and Klatt will ask leave of this Court to amend her Complaint to insert the true names and capacities of said ROE CORPORATIONS when the same become ascertained, and join said Defendants in this action.

///

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

8.     Upon information and belief and at all relevant times, the Defendants were acting on behalf of one another, at the direction of one other, and as agents of one another relating to the allegations contained herein.

9.     Each and every one of the events or omissions giving rise to the claims alleged herein occurred in the State of Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10.    Klatt received a Bachelor of Arts Degree from the University of Nevada Las Vegas in June of 2013.

11.    In June of 2015 Klatt graduated from Touro University, located in Henderson, Nevada, with a Bachelor of Science Degree in Nursing.

12.    Klatt received her license as a Registered Nurse on September 18, 2015.

13.    Thereafter, Klatt applied for a nursing position with Dignity and received an offer of employment, which she accepted.  The position that Klatt applied for and accepted was for a New Graduate Registered Nurse in the Orthopedic/Joint Replacement Unit at St. Rose Dominican Hospital's Siena Campus.

14.    Klatt began her employment at Dignity's St. Rose Dominican Hospital - Siena Campus on January 18, 2016.

15.    As part of her employment, Klatt was required, as a condition of her employment with Dignity, to participate in a Nursing Residency Program ("Residency Program").

16.    The Residency Program was twelve weeks long and was comprised of a series of classes taught by Dignity employees, no outside educators were utilized during Klatt's Residency Program and participation in the Residency Program was mandatory.

17.    Dignity expressly and impliedly falsely represented to Klatt that the training she was to receive during the Residency Program would sufficiently train her for continued employment as a nurse at Dignity after the conclusion of the Residency Program.  Relying on these misrepresentations, Klatt agreed to participate in the Residency Program.

18.    Relating to the Residency Program, Klatt was required to sign a document entitled "Internal Education Program Agreement and Promissory Note" ("Promissory Note").  Falsely,

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

3

believing that the terms of the Promissory Note were appropriate and lawful, Klatt executed the Promissory Note on January 14, 2016 prior to the commencement of her employment with Dignity, but after she had accepted a position with Dignity.

19.    Prior to January 14, 2016, Dignity never informed Klatt in writing or otherwise, that she would be required to sign a Promissory Note.

20.    Nor did Dignity ever inform Klatt in writing or otherwise that upon completion of the Residency Program that she would have to "reapply" for a position in the department to which she was hired.

21.    In signing the Promissory Note, Klatt justifiably understood that she had been hired by Dignity and was now a Dignity employee.  Dignity never informed Klatt in writing or otherwise that there was no guarantee that she would be hired into the department that she was hired into after completing the Residency Program.

22.    The Promissory Note was in the amount of $8,000.  The Promissory Note identified that interest on the principal amount accrued at 15% per annum.  It also stated that Dignity was also entitled to the payment of its attorney's fees and costs in collecting any unpaid outstanding amounts.  Pursuant to its terms, over the course of Klatt's employment with Dignity, the Promissory Note would be forgiven on a pro rata basis over two years.  If Klatt remained an employee of Dignity for two years, the Promissory Note was to be fully forgiven.

23.    Klatt was never informed, however, when the two-year period commenced and believed that it began on either the day she signed the Promissory Note or her first day of employment.  The Promissory Note states in part, "WHEREAS, the payment hereunder is not primarily a loan but is instead a payment conditioned on future services by the Benefit Recipient specifically remaining an active employee in good standing with the Employer for a minimum period of 2 years ("Required Service Period") working the equivalent of full time (or benefited part time, if applicable) service after execution of this Note."  Thus, the Promissory Note, in addition to being a loan, was also an agreement to not compete and an unlawful penalty.  Klatt received no separate consideration/compensation in signing the Promissory Note.  Alternatively, the Promissory Note constituted an employment agreement with Klatt.

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

4

24.     With regard to the value of the Promissory Note, there is no relationship between the amount of the Promissory Note and the actual value of the training received through the Residency Program.  In fact, the Residency Program has no separate value to an employee at all because Dignity is required to appropriately train its employees regardless of whether they participate in the Residency Program or not.  The requirement to adequately train its staff and provide appropriate patient care arises, in part, through Dignity's various accreditation bodies as well as through federal and state governments.  Dignity's representations and/or material omissions regarding the value of the Residency Program were intentional and knowingly false and Klatt and others similarly situated relied upon these representations and/or omissions.

25.     The Promissory Note is an unenforceable agreement not to compete and constitutes an unlawful penalty.  As set forth above, alternatively, the Promissory Note constituted a two-year employment agreement between Dignity and Klatt.

26.     In addition, Dignity deliberately and intentionally failed to provide Klatt and other participants of the Residency Program with various applicable policies and procedures that explained how the Promissory Note and Residency Program worked.  And, if Residency Program participants were ever given such policies and procedures, it was not until after the employee had already signed the Promissory Note and agreed to be bound by it.

27.     In one of the applicable policies and procedures that was not provided to participants of the Residency Program or was provided after an employee had signed the Promissory Note, the policy required a Dignity Hospital President to sign the Promissory Note to evidence Dignity's intent to be bound.  No Dignity Hospital President, however, ever signed a Promissory Note relating to the Residency Program.  Thus, the Promissory Note could not have constituted a binding agreement, which Dignity was clearly aware of.  By representing to the participants of the Residency Program that the Promissory Note was a binding agreement and subsequently attempting to enforce the terms of the Promissory Note without a Dignity Hospital President's signature on the document, Dignity engaged in intentional and knowingly fraudulent conduct.

///

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

28.     After Klatt completed the Residency Program and received her Certificate of Completion, she was terminated from Dignity shortly thereafter, on or about May 14, 2016.  As set forth above, Klatt justifiably relied on Dignity's material misrepresentations and/or omissions that if she completed the Residency Program, as she did, she would be adequately and appropriately trained for a long-term position with Dignity.

29.     Klatt believes that she was terminated from her employment with Dignity improperly and without appropriate justification.  Dignity either intentionally misrepresented to Klatt that she had completed the Residency Program or Klatt did in fact complete the Residency Program and Dignity terminated her without justification or cause.

30.     In addition, a number of Klatt's evaluations during her employment were not kept in violation of Dignity's policies and procedures and the evaluations that were retained were intentionally and deliberately inaccurate.

31.     After Klatt's termination, it was difficult for her to find other employment in her field, in part because Klatt was employed at Dignity for such a short period of time.

32.     When Klatt was terminated, her "final paycheck" in the amount of $1,117.85 was unlawfully withheld by Dignity as a partial repayment of the Promissory Note, which at the time of her termination she did not consent to in writing or otherwise.  Thereafter, Dignity sought the repayment of the prorated balance of the Promissory Note.

33.     Dignity has asserted that Klatt did in fact receive her "final paycheck" and that the check that was withheld from her was for paid time off.  Although Klatt disputes that she received her "final paycheck" and believes that paid time off constitutes "wages", even if Dignity were correct in this regard, the Promissory Note only gives Dignity the right to withhold an employee's "final paycheck".  Thus, if Dignity does not believe that it withheld Klatt's "final paycheck" then it had no right to withhold any amounts from Klatt when she was terminated from her employment.  Moreover, Dignity is estopped from asserting that paid time off does not constitute wages given that Dignity interpreted its own promissory notes as including paid time off as wages.

///

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

34.    NAC 608.160(3) states that, "An employer may not use a blanket authorization that was made in advance by the employee to withhold any amount from the wages due the employee." *See Coast Hotels & Casinos v. Nev. State Labor Comm'n*, 117 Nev. 835, 34 P.3d 546 (2001).

35.    Despite this, the Promissory Note states in pertinent part:

> For Events of Default caused by separation from employment (including separation from employment prior to payment in full of the Note), Benefit Recipient authorizes Employer to withhold from his/her final paycheck all amounts due to Employer under this Note. In the event the Benefit Recipient's final paycheck is insufficient to cover the total dollar amount owed to Employer hereunder, Benefit Recipient agrees to pay the balance due monthly on the first day of each month, in six (6) equal installments, commencing the first (1st) month following an Event of Default, including, without limitation, termination or change of employment (other than layoff).

36.    Based on NAC 608.160(3), the language contained within the Promissory Note authorizing Dignity to withhold funds from an employee's last paycheck for amounts allegedly due to it is void.

37.    When Klatt was presented with the Promissory Note to sign, Dignity made material misrepresentations that the Promissory Note and all of its provisions were lawful, customary, standard and had been appropriately reviewed by Dignity administration.

38.    When Klatt was presented with the Promissory Note to sign, Dignity failed to inform her that it contained an illegal provision and/or that the Promissory Note was unlawful, not customary, nonstandard and had not been appropriately vetted by Dignity administration.

39.    Klatt relied upon these material misrepresentations and/or omissions in signing the Promissory Note and believing that she was bound by the terms contained therein.

40.    Additionally, the participants of the Residency Program and those individuals that signed relocation and tuition assistance loans relied on Dignity's representations or material omissions by believing that they were bound by the terms of their respective promissory notes and that the terms of those promissory notes were appropriate and lawful.  With specific regard to the Residency Program Promissory Notes, they were presented by Dignity on a "take it or leave it"

basis.  Thus, Dignity employees, like Klatt, had no choice but to sign the Promissory Note, accepting its unlawful and detrimental terms, as a condition of their employment.

41.    Current and former Dignity employees that signed promissory notes, including relocation and tuition assistance loans, justifiably relied on Dignity's misrepresentations, and/or material omissions, in believing that they were/are bound by their respective promissory notes for a specified period of time, even though they are not legally enforceable and do no need to be repaid in whole or in part.  Current and former Dignity employees further relied upon Dignity's misrepresentations and/or omissions as to the date when their service obligation began.

42.    Dignity, during a hearing conducted on August 14, 2018 in this case, finally acknowledged that "We concede, Your Honor, that [the provisions permitting Dignity to withhold an employee's final paycheck] doesn't follow the letter of that statute -- of that regulation, but I don't know that it -- I do know, rather, that it is our position that it does not void the contract."  In addition, Dignity's law firm in this case, previously obtained an opinion from the California Division of Labor Standards Enforcement that pursuant to California law deductions from an employee's final paycheck for debts owed the employer are prohibited even with prior written authorization.

43.    Importantly, there is no severability clause contained within the Promissory Note.

44.    Thus, each and every Promissory Note utilized by Dignity in the State of Nevada containing a similar blanket authorization for the withholding of an employee's final paycheck as well as similar noncompete language is void.

45.    Dignity utilizes similar unlawful promissory notes for other types of loans including, but not limited to, relocation and tuition assistance loans and has done so going back well before 2009.

46.    There are in excess of 129 individuals that had amounts withheld from their paychecks based on the promissory notes at issue.  There are in excess of 324 individuals that signed void promissory notes but did not have amounts withheld from them.  This figure excludes individuals that signed relocation or tuition assistance loans but did not have amounts withheld. If such individuals are included, it is believed that the number well exceeds 600.

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

8

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

47.     As further evidence of Dignity's unlawful and fraudulent conduct, upon an employee's separation from their employment with Dignity, where that employee had an alleged balance due and owing relating to a promissory note, in a number of instances former employees received $0 final paychecks.  The fact that Dignity knew or should have known that the promissory notes at issue were void and yet still withheld some of its employees' entire final paychecks evidences its wholly improper conduct, especially given that in doing so it likely violated applicable state and federal minimum wage laws.

48.     In addition, Dignity's own policy regarding the Residency Program specifically identifies that an employee is only obligated to repay the prorated portion of the Promissory Note if an employee terminates his or her employment with Dignity, not if Dignity terminates the employee's employment.

49.     Paragraph 4.5 of the Policy states:

> If the employee terminates employment . . . prior to completing the service obligation, the employee is obligated by the signed promissory note to repay the educational assistance monies based on the prorated amount of remaining employment time owed to the employer.

(Emphasis added.)

50.     The Promissory Note specifically identifies that in instances where there is an inconsistency between the Promissory Note and the Policy, the Policy shall govern.

51.     Klatt was never informed that if she was terminated from her employment with Dignity, that Dignity would require the repayment of the prorated portion of the Promissory Note. Her understanding was that she would be required to repay the prorated portion of the Promissory Note only if she voluntarily quit within the two-year time-period.

52.     Based on the foregoing, Dignity intentionally and deliberately withheld Klatt's final paycheck in direct contravention of its own policies and procedures in an attempt to financially damage her.

53.     After Klatt was terminated from her employment with Dignity and her final paycheck was withheld in violation of NAC 608.160(3), Klatt sent a Demand Letter to Dignity

1   requesting payment of the value of her final paycheck as well as her statutory remedy of an

2   additional 30 days of pay pursuant to NAC 608.050.   Dignity failed to respond to the letter, and

3   in doing so, acknowledged its own wrongdoing.

4          54.     Klatt also filed a complaint with the Nevada Labor Commissioner relating to

5   Dignity's unlawful withholding of her final paycheck.   During the course of that proceeding,

6   which Klatt subsequently withdrew and voluntarily dismissed, Dignity issued a check in the

7   amount of $2,134.25 (representing $1,117.85 in unpaid wages and a penalty in the amount of

8   $1,016.40) to Klatt.   By issuing the check, which Klatt refused to accept, Dignity acknowledged

9   and admitted its wrongdoing in this matter.

## FIRST CAUSE OF ACTION
### (Fraud)

11         55.     Klatt repeats and realleges each and every fact and allegation contained in this

12  First Amended Complaint and incorporates the same herein by reference as though fully set forth

13  herein.

14         56.     On behalf of Klatt individually, Dignity intentionally and falsely represented that

15  the training she was to receive through the Residency Program would sufficiently train her for

16  continued employment with Dignity after completion of the Residency Program.   Alternatively,

17  Dignity intentionally failed to disclose to Klatt that the training she was to receive through the

18  Residency Program may not sufficiently train her for continued employment with Dignity after

19  completion of the Residency Program.

20         57.     Klatt relied upon this material misrepresentation and/or omission in deciding to

21  accept a position with Dignity and to participate in the Residency Program instead of pursuing

22  other employment opportunities.

23         58.     On behalf of Klatt individually, Dignity intentionally and falsely represented that

24  Klatt had completed the Residency Program by providing her with a Certificate of Completion,

25  even though Dignity has asserted that Klatt did not in fact successfully complete the Residency

26  Program.   Alternatively, Dignity intentionally failed to disclose to Klatt that it believed that Klatt

27

28

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

had not successfully completed the Residency Program when she received the Certificate of Completion.

59.     Klatt relied upon this material misrepresentation and/or omission by believing her job performance with Dignity was satisfactory and acceptable, and thereby not seeking out other potential employment opportunities prior to her termination.

60.     On behalf of Klatt individually, Dignity intentionally and falsely represented that Klatt would not be required to repay any portion of the Promissory Note if she was terminated from her employment with Dignity.  Alternatively, Dignity intentionally failed to disclose to Klatt its belief that Klatt would be required to repay a prorated portion of the Promissory Note if she was terminated from her employment.

61.     Klatt relied upon this material misrepresentation and/or omission in deciding to accept a position with Dignity and participate in the Residency Program instead of pursuing other employment opportunities.

62.     On behalf of Klatt and all others similarly situated, Dignity intentionally and falsely represented that it had a legal right to withhold its employees' final paycheck as partial repayment of the Promissory Note and all others containing similar language.

63.     The Promissory Note and all others containing similar language are void.  Dignity was aware that the Promissory Note and all others containing similar language were/are void.

64.     The Promissory Note and all other promissory notes containing similar language constitute unlawful agreements not to compete and constitute an unlawful penalty.

65.     Dignity intentionally required its employees/nurses to sign these void promissory notes and attempted to enforce them, in part: 1) to unlawfully penalize employees for leaving their employment with Dignity; 2) to unlawfully penalize employees from going to work for competing businesses; and 3) to unlawfully recover any costs of training and hiring employees.

66.     On behalf of Klatt and all others similarly situated who signed promissory notes containing an authorization to withhold an employee's wages, Dignity intentionally and falsely represented that those promissory notes were lawful, customary, standard and had been appropriately reviewed by Dignity administration.  Alternatively, Dignity intentionally failed to

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

11

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

disclose to Klatt and all others similarly situated who signed such promissory notes that those promissory notes were unlawful, not customary, nonstandard and had not been appropriately vetted by Dignity administration.

67.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions in deciding to sign their promissory notes believing themselves to be bound by them.

68.    In making such representations, Dignity, by way of example only, engaged in a deceptive trade practice by, among other things, "knowingly misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction.  NRS 598.092(8).

69.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to inform prospective employees prior to their acceptance of a position with Dignity and/or commencement of employment that they would be required to sign a promissory note.

70.    Because Klatt and all others similarly situated were unaware that they would be required to sign a promissory note, they were denied the opportunity to look for other employment and, thus, relied upon the material omissions made by Dignity.

71.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to signing the Promissory Note that they would have to "reapply" for a position in the department to which they were hired after completing the Residency Program and that they were not guaranteed a position in that department.

72.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

73.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to the signing

their Promissory Note, that the service term set forth in the promissory note did not begin until the employee transitioned from the Residency Program to the employee's particular department.

74.   Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

75.   On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to the signing of their Promissory Note, that there is no relationship between the amount of the Promissory Note and the actual value of the training received through the Residency Program.   In fact, the Residency Program has no separate value to an employee at all because Dignity is required to appropriately train its employees regardless of whether they participate in the Residency Program or not.

76.   Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

77.   On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to provide employees with relevant and related policies and procedures prior to the employee signing the Promissory Note.

78.   Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions when they signed the Promissory Note, believing it to contain all of the applicable terms that defined the obligations between the parties.

79.   On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity intentionally failed to comply with its own policies and procedures that required a hospital President to sign each and every Promissory Note.  By deliberately failing to adhere to Dignity's own policies and procedures, each Promissory Note could not have constituted a binding agreement.  By representing to the participants of the Residency Program

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

that the Promissory Note was a binding agreement and subsequently attempting to enforce the terms of the Promissory Note, Dignity engaged in intentional and knowingly fraudulent conduct.

80.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions, believing that that each Promissory Note constituted a binding agreement.

81.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

82.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

83.    Klatt and all others similarly situated are informed and believe and thereon allege that Dignity's conduct was willful, wanton and malicious and was done in conscious disregard of Klatt's rights and those of all others similarly situated.  As a direct result, Klatt and all others similarly situated are entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
**(Deceptive Trade Practices)**

84.    Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

85.    On behalf of Klatt individually and all others similarly situated, Dignity engaged in a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598 by among other things, requiring Klatt and other employees to sign promissory notes that permitted Dignity to withhold an employee's final paycheck as partial repayment.

86.    The Promissory Note and all others containing similar language as that set forth above are void.  Dignity was aware that the Promissory Note and all others containing similar language were void.

///

///

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

87.     Dignity represented that the Promissory Note and all others containing similar language were lawful, customary, standard and had been appropriately reviewed by Dignity administration.

88.     The Promissory Note and all other promissory notes containing similar language constitute unlawful agreements not to compete and constitute an unlawful penalty.

89.     Dignity intentionally required its employees/nurses to sign these void promissory notes and attempted to enforce them, in part: 1) to unlawfully penalize employees for leaving their employment with Dignity; 2) to unlawfully penalize employees from going to work for competing businesses; and 3) to unlawfully recover any costs of training and hiring employees.

90.     Dignity's conduct relating to the Promissory Note and all others containing similar language constitute a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598.

91.     By way of example only, Dignity engaged in a deceptive trade practice by among other things, "knowingly misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction.  NRS 598.092(8).

92.     In addition, Dignity deliberately and purposefully failed to disclose to consumers who were potential new nurse graduate employees in the Las Vegas valley and elsewhere that they would be required to sign a Promissory Note and the terms of that Promissory Note relating to the Residency Program if they accepted employment with Dignity.   This constituted a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598.

93.     Dignity also failed to disclose to consumers who were potential new nurse graduate employees in the Las Vegas valley and elsewhere that completion of the Residency Program did not guarantee them a position within the department to which they would be hired. This constituted a deceptive trade practice pursuant to Nev. Rev. Stat. Ch. 598.

94.     When Dignity made representations regarding the Residency Program it intentionally provided misleading or untrue information to consumers who were potential new nurse graduate employees in the Las Vegas valley and elsewhere.

95.     The foregoing referenced individuals relied upon Dignity's representations or material omissions in deciding to accept employment positions with Dignity.

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

96.     As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

97.     As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

98.     Klatt and all others similarly situated are informed and believe and thereon allege that Dignity's conduct was willful, wanton and malicious and was done in conscious disregard of Klatt's rights and those of all others similarly situated.  As a direct result, Klatt and all others similarly situated are entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

99.     Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

100.    On behalf of Klatt individually, Dignity negligently and falsely represented that the training she was to receive through the Residency Program would sufficiently train her for continued employment with Dignity after completion of the Residency Program.  Alternatively, Dignity negligently failed to disclose to Klatt that the training she was to receive through the Residency Program may not sufficiently train her for continued employment with Dignity after completion of the Residency Program.

101.    Klatt relied upon this material misrepresentation and/or omission in deciding to accept a position with Dignity and to participate in the Residency Program instead of pursuing other employment opportunities.

102.    On behalf of Klatt individually, Dignity negligently and falsely represented that Klatt had completed the Residency Program by providing her with a Certificate of Completion, even though Dignity has asserted that Klatt did not in fact successfully complete the Residency Program.  Alternatively, Dignity negligently failed to disclose to Klatt that it believed that Klatt

had not successfully completed the Residency Program when she received the Certificate of Completion.

103.   Klatt relied upon this material misrepresentation and/or omission by believing her job performance with Dignity was satisfactory and acceptable, and thereby not seeking out other potential employment opportunities prior to her termination.

104.   On behalf of Klatt individually, Dignity negligently and falsely represented that Klatt would not be required to repay any portion of the Promissory Note if she was terminated from her employment with Dignity.  Alternatively, Dignity negligently failed to disclose to Klatt its belief that Klatt would be required to repay a prorated portion of the Promissory Note if she was terminated from her employment.

105.   Klatt relied upon this material misrepresentation and/or omission in deciding to accept a position with Dignity and participate in the Residency Program instead of pursuing other employment opportunities.

106.   On behalf of Klatt and all others similarly situated, Dignity negligently and falsely represented that it had a legal right to withhold its employees' final paycheck as partial repayment of the Promissory Note and all others containing similar language.

107.   The Promissory Note and all others containing similar language are void.  Dignity was aware that the Promissory Note and all others containing similar language were/are void.

108.   The Promissory Note and all other promissory notes containing similar language constitute unlawful agreements not to compete and constitute an unlawful penalty.

109.   Dignity negligently required its employees/nurses to sign these void promissory notes and attempted to enforce them, in part: 1) to unlawfully penalize employees for leaving their employment with Dignity; 2) to unlawfully penalize employees from going to work for competing businesses; and 3) to unlawfully recover any costs of training and hiring employees.

110.   On behalf of Klatt and all others similarly situated who signed promissory notes containing an authorization to withhold an employee's wages, Dignity negligently and falsely represented that those promissory notes were lawful, customary, standard and had been appropriately reviewed by Dignity administration.  Alternatively, Dignity negligently failed to

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

disclose to Klatt and all others similarly situated who signed such promissory notes that those promissory notes were unlawful, not customary, nonstandard and had not been appropriately vetted by Dignity administration.

111.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions in deciding to sign their promissory notes believing themselves to be bound by them.

112.    In making such representations, Dignity, by way of example only, also engaged in a deceptive trade practice by, among other things, "knowingly misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction.  NRS 598.092(8).

113.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to inform prospective employees prior to their acceptance of a position with Dignity and/or commencement of employment that they would be required to sign a promissory note.

114.    Because Klatt and all others similarly situated were unaware that they would be required to sign a promissory note, they were denied the opportunity to look for other employment and, thus, relied upon the material omissions made by Dignity.

115.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to signing the Promissory Note that they would have to "reapply" for a position in the department to which they were hired after completing the Residency Program and that they were not guaranteed a position in that department.

116.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

117.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to the signing

18

their Promissory Note, that the service term set forth in the promissory note did not begin until the employee transitioned from the Residency Program to the employee's particular department.

118.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

119.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to inform prospective employees prior to their acceptance of a position with Dignity, commencement of employment and/or prior to the signing of their Promissory Note, that there is no relationship between the amount of the Promissory Note and the actual value of the training received through the Residency Program.  In fact, the Residency Program has no separate value to an employee at all because Dignity is required to appropriately train its employees regardless of whether they participate in the Residency Program or not.

120.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions by deciding to accept a position with Dignity, participate in the Residency Program and sign a Promissory Note.

121.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to provide employees with relevant and related policies and procedures prior to the employee signing the Promissory Note.

122.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions when they signed the Promissory Note, believing it to contain all of the applicable terms that defined the obligations between the parties.

123.    On behalf of Klatt and all others similarly situated who signed Residency Program Promissory Notes, Dignity negligently failed to comply with its own policies and procedures that required a hospital President to sign each and every Promissory Note.  By negligently failing to adhere to Dignity's own policies and procedures, each Promissory Note could not have constituted a binding agreement.  By representing to the participants of the Residency Program that the

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

Promissory Note was a binding agreement and subsequently attempting to enforce the terms of the Promissory Note, Dignity engaged in negligent conduct.

124.    Klatt and all others similarly situated, relied upon these material misrepresentations and/or omissions, believing that that each Promissory Note constituted a binding agreement.

125.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

126.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

127.    Klatt and all others similarly situated are informed and believe and thereon allege that Dignity's conduct was willful, wanton and malicious and was done in conscious disregard of Klatt's rights and those of all others similarly situated.  As a direct result, Klatt and all others similarly situated are entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract)**

128.    Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

129.    Klatt individually and on behalf of all others similarly situated, asserts that Dignity breached the Promissory Note and all other promissory notes containing similar language in instances where it attempted to enforce the blanket provision permitting Dignity to withhold an employee's final paycheck as partial repayment of a promissory note, which is void as a matter of law.

130.    Further, Klatt individually asserts that Dignity breached the Promissory Note when it attempted to enforce the blanket provision permitting Dignity to withhold an employee's final paycheck as partial repayment of the Promissory Note.

///

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

131.    Additionally, Dignity has asserted that Klatt received her "final paycheck" and that the check that was withheld from her was for paid time off.  Although Klatt disputes that she received her "final paycheck" and believes that paid time off constitutes "wages", even if Dignity were correct in this regard, the Promissory Note and all other similar promissory notes only give Dignity the right to withhold an employee's "final paycheck".  Thus, if Dignity does not believe that it withheld Klatt's "final paycheck" then it had no right to withhold any amounts from Klatt when she was terminated from her employment.  Moreover, Dignity is estopped from asserting that paid time off does not constitute wages given that Dignity interpreted its own promissory notes as including paid time off as wages.

132.    As such, to the extent that Dignity withheld an employee's paid time off as partial satisfaction of the prorated portion of a promissory note, and paid time off does not constitute "wages", which Klatt and all others similarly situated dispute, then Dignity had no basis to withhold such amounts and therefore breached the Promissory Note and all other similar promissory notes.

133.    Additionally, the Promissory Note constituted an employment agreement that Dignity breached.

134.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

135.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

## FIFTH CAUSE OF ACTION
### (Contractual Breach of the Covenant of Good Faith and Fair Dealing)

136.    Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

137.    Klatt individually and on behalf of all others similarly situated, asserts that Dignity breached the covenant of good faith and fair dealing as to the Promissory Note and all other

promissory notes containing similar language in instances where it attempted to enforce the blanket provision permitting Dignity to withhold an employee's final paycheck as partial repayment of a promissory note, which is void as a matter of law.

138.    Further, Klatt individually asserts that Dignity breached the covenant of good faith and fair dealing when it attempted to enforce the blanket provision contained within the Promissory Note permitting Dignity to withhold an employee's final paycheck as partial repayment of the Promissory Note.

139.    Additionally, Dignity has asserted that Klatt received her "final paycheck" and that the check that was withheld from her was for paid time off.  Although Klatt disputes that she received her "final paycheck" and believes that paid time off constitutes "wages", even if Dignity were correct in this regard, the Promissory Note and all other similar promissory notes only give Dignity the right to withhold an employee's "final paycheck".  Thus, if Dignity does not believe that it withheld Klatt's "final paycheck" then it had no right to withhold any amounts from Klatt when she was terminated from her employment.  Moreover, Dignity is estopped from asserting that paid time off does not constitute wages given that Dignity interpreted its own promissory notes as including paid time off as wages.

140.    As such, to the extent that Dignity withheld an employee's paid time off as partial satisfaction of the prorated portion of a promissory note, and paid time off does not constitute "wages", which Klatt and all others similarly situated dispute, then Dignity had no basis to withhold such amounts and therefore breached the covenant of good faith and fair dealing as to the Promissory Note and all other similar promissory notes.

141.    Additionally, the Promissory Note constituted an employment agreement and Dignity breached the covenant of good faith and fair dealing relating to it.

142.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

143.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## SIXTH CAUSE OF ACTION
### (Tortious Breach of the Covenant of Good Faith and Fair Dealing)

144.    Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

145.    A special element of reliance exists between Dignity and its employees, including Klatt.

146.    Klatt individually and on behalf of all others similarly situated, asserts that Dignity tortiously violated the covenant of good faith and fair dealing as to the Promissory Note and all other promissory notes containing similar language in attempting to enforce the blanket provision permitting Dignity to withhold an employee's final paycheck as partial repayment of a promissory note, which is void as a matter of law.

147.    Further, Klatt individually asserts that Dignity tortiously breached the covenant of good faith and fair dealing when it attempted to enforce the blanket provision contained within the Promissory Note permitting Dignity to withhold an employee's final paycheck as partial repayment of the Promissory Note.

148.    Additionally, Dignity has asserted that Klatt received her "final paycheck" and that the check that was withheld from her was for paid time off.  Although Klatt disputes that she received her "final paycheck" and believes that paid time off constitutes "wages", even if Dignity were correct in this regard, the Promissory Note and all other similar promissory notes only give Dignity the right to withhold an employee's "final paycheck".  Thus, if Dignity does not believe that it withheld Klatt's "final paycheck" then it had no right to withhold any amounts from Klatt when she was terminated from her employment.  Moreover, Dignity is estopped from asserting that paid time off does not constitute wages given that Dignity interpreted its own promissory notes as including paid time off as wages.

149.    As such, to the extent that Dignity withheld an employee's paid time off as partial satisfaction of the prorated portion of a promissory note, and paid time off does not constitute "wages", which Klatt and all others similarly situated dispute, then Dignity had no basis to

23

withhold such amounts and therefore tortiously breached the covenant of good faith and fair dealing as to the Promissory Note and all other similar promissory notes.

150.    Additionally, the Promissory Note constituted an employment agreement and Dignity tortiously breached the covenant of good faith and fair dealing relating to it.

151.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated are entitled to damages in excess of $75,000.

152.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

153.    Klatt and all others similarly situated are informed and believe and thereon allege that Dignity's conduct was willful, wanton and malicious and was done in conscious disregard of Klatt's rights and those of all others similarly situated.  As a direct result, Klatt and all others similarly situated are entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
**(Declaratory Relief)**

154.    Klatt repeats and realleges each and every fact and allegation contained in this First Amended Complaint and incorporates the same herein by reference as though fully set forth herein.

155.    A justiciable controversy has arisen as to enforceability of the Promissory Note and/or any of its terms, and all other promissory notes that contain similar language at issue in this case.

156.    A judicial declaration of the parties' rights is necessary to avoid any further dispute between the parties and all others similarly situated relating to the issues set forth herein.

157.    As a result of Dignity's actions and/or inactions, Klatt and all others similarly situated have been forced to retain the undersigned counsel to prosecute this action and are entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Klatt and all others similarly situated pray for judgment as follows:

A.    For damages in an amount to be determined at trial, but in excess of $75,000.00;

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

24

B.    For exemplary or punitive damages;

C.    Attorney's fees and costs of suit;

D.    Prejudgment and post-judgment interest on the amounts owed;

E.    For declaratory relief as set forth above; and

F.    Any further relief this Court deems proper.

DATED this 28thth day of August, 2018.

SEMENZA KIRCHER RICKARD

/s/ Lawrence J. Semenza, III
Lawrence J. Semenza, III, Bar No. 7174
Christopher D. Kircher, Bar No. 11176
Jarrod L. Rickard, Bar No. 10203
10161 Park Run Dr., Ste. 150
Las Vegas, Nevada 89145

*Attorneys for Plaintiff Megan E. Klatt
and all others similarly situated*

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

SEMENZA KIRCHER RICKARD
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone: (702) 835-6803

## CERTIFICATE OF SERVICE

I am employed by the law firm of Semenza Kircher Rickard in Clark County, Nevada. I am over the age of 18 and not a party to this action. The business address is 10161 Park Run Drive, Suite 150, Las Vegas, Nevada 89145.

On the 28th day of August 2018, I served the document(s), described as:

### FIRST AMENDED CLASS ACTION COMPLAINT

☒   by placing the ☐ original ☒ a true copy thereof enclosed in a sealed envelope addressed

☐  a.  **ECF System** *(You must attach the "Notice of Electronic Filing", or list all persons and addresses and attach additional paper if necessary)*

☒  b.  **BY U.S. MAIL.** I deposited such envelope in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid. I am readily familiar with Semenza Kircher Rickard's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

Elayna J. Youchah
Kirsten A. Milton
JACKSON LEWIS P.C.
3800 Howard Hughes Parkway, Ste. 600
Las Vegas, Nevada 89169
*Attorneys for Defendant*

☐  c.  **BY PERSONAL SERVICE.**

☒  d.  **BY DIRECT EMAIL.**

Elayna J. Youchah (Elayna.Youchah@jacksonlewis.com)
Kirsten A. Milton (Kirsten.Milton@jacksonlewis.com)
JACKSON LEWIS P.C.
*Attorneys for Defendant*

☐  e.  **BY FACSIMILE TRANSMISSION.**

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Teresa N. Beiter*
An Employee of Semenza Kircher Rickard